```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

FREDDIE L. COLQUITT,

                     Plaintiff,

vs.                                Case No.  2:05-cv-413-FtM-29DNF

OFFICER ANDERSON, SERGEANT DAROSS,
M. RODGERS, SERGEANT SCOTT BROCK,
Capt., MICHAEL WAITE, MAJOR, K.
SOSA,   Officer,   C.   MINICHINI,
Officer, OFFICER HERNANDEZ,

                     Defendants.
_____
```

## OPINION AND ORDER

This matter comes before the Court upon review of Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #58, "Defendants' Motion") filed on behalf of above named Defendants. Defendants attach the following exhibits in support of their Motion.

> Affidavit of Scott Brock, Captain, Lee County Core Jail Facility, executed on November 13, 2007 ("Defs. Exh. 1"). Attached to Capt. Brock's Affidavit are the following documents:
>
> > a.   Log Books from July 23, 2005 ("Defs. Exh. 1-a");
> > b.   Standard Operating Procedure 4.03 ("Defs. Exh. 1-b");
> > c.   Standard operating Procedure 7.01 ("Defs. Exh. 1-c");
> > d.   Disciplinary Report Routing Sheet ("Defs. Exh. 1-d");
> > e.   Inmate Disciplinary Report Supplement ("Defs. Exh. 1-e");
> > f.   July 27, 2005 Affidavit of Sergeant DaRoss ("Defs. Exh. 1-f");

g.    July 23, 2005 Affidavit of Officer Thomas Anderson ("Defs. Exh. 1-g");

h.    Inmate Disciplinary Report ("Defs. Exh. 1-h");

i.    Disciplinary Recommendation and Watch Commander Review ("Defs. Exh. 1-i");

j.    Confinement Log for Plaintiff ("Defs. Exh. 1-j");

k.    Plaintiff's Appeal of Disciplinary Committee Recommendation with Affidavit ("Defs. Exh. 1-k");

l.    Plaintiff's "Addendum to Appeal" ("Defs. Exh. 1-l");

m.    August 2, 2005 Affidavit of Officer Minichini ("Defs. Exh. 1-m");

n.    Grievance Response dated August 4, 2005 ("Defs. Exh. 1-n");

o.    Grievance Report dated July 28, 2005 ("Defs. Exh. 1-o");

p.    Photograph of Pod C taken on August 31, 2007("Defs. Exh. 1-p")[1]; and

q.    Diagram of Pod C ("Defs. Exh. 1-q").

Affidavit of Thomas Anderson, Master Corporal, Lee County Sheriff's Office, executed November 12, 2007 ("Defs. Exh. 2");

Affidavit of Michael Waite, Colonel, Lee County Sheriff's Office, executed November 12, 2007 ("Defs. Exh. 3");

Affidavit of Mia Rodgers, Lieutenant, Lee County Sheriff's Office, executed November 13, 2007 ("Defs. Exh. 4");

Affidavit of Debbie Hernandez, Deputy, Lee County Jail, executed November 13, 2007 ("Defs. Exh. 5");

Affidavit of Garrrett DaRoss, (Former) Deputy, Lee County Jail, executed November 14, 2007 ("Defs. Exh. 6");

---

[1]The photograph is "an accurate representation" of the Plaintiff's cell "from the ground level of the jail" as it would have appeared on the date of the incident--July 23, 2005. Brock Aff. at 3, ¶11.

Affidavit of Krystal Chase,[2] Deputy, Lee County Jail, executed November 12, 2007.  Attached to Deputy Chase's Affidavit is a copy of the Policy & Procedures Re: Disciplinary Process/Hearing/Action for the Lee County Detention Bureau, effective July 27, 2000 ("Defs. Exh. 7").

The Court advised Plaintiff how to respond to a motion for summary judgment, and directed Plaintiff to file a response. <u>See</u> Order of Court dated November 28, 2007 (Doc. #59).  On December 7, 2007, Plaintiff filed a Response to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #64, "Plaintiff's Response").  Plaintiff attaches the following exhibits in support of his Response:

Call Detail Report from July 23, 2005 ("Pl. Exh. A-1");

Lee County Florida Detention Bureau Confinement Log ("Pl. Exh. A-2");

North 1 Logbook for Saturday, July 23, 2005 ("Pl. Exh. A-3");

July 23, 2005 Affidavit of Sergeant DaRoss ("Pl. Exh. B");

July 27, 2005 Affidavit of Sergeant Rodgers ("Pl. Exh. C");

Plaintiff's [First] Request for Admission and Defendants' Responses thereto ("Pl. Exh. D");

Inmate Disciplinary Report dated July 23, 2005 charging Plaintiff  with violation of regulation #8-conduct which interferes with the security and orderly running of the institution, investigation, notes of comments by Plaintiff, and committee finding of "guilty" ("Pl. Exh. E");

---

[2]At the time of the incident, Deputy Krystal Chase was formerly known as Deputy Krystal Sosa.

Inmate Request dated November 7, 2007 re: Plaintiff's classification status ("Pl. Exh. F").

Plaintiff's Second Request for Admission and Defendants' Responses thereto ("Pl. Exh. G");

Plaintiff's Third Set of Request for Admission and Defendants' Responses thereto ("Pl. Exh. H");

Lee County Sheriff's Office Operations Manual, Chapter 26 ("Pl. Exh. I");

Lee County Sheriff's Office Policy Re: Movement of Inmates ("Pl. Exh. J);

Lee County Sheriff's Office Policy Re: Disciplinary Process/Hearing/Action ("Pl. Exh. K");

August 2, 2005 Affidavit of Deputy Minichini ("Pl. Exh. L");

Lee County Sheriff's Office Policy Re: Documentation-Logs-Reports ("Pl. Exh. M");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. N");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. O");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. P");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. Q");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. R");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. S");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. T");

December 16, 2007 Affidavit of Plaintiff ("Pl. Exh. U").

Defendants contend that there are no material facts in dispute and that and that they are entitled to summary judgment as matter of law.  See generally Defendants' Motion.  Plaintiff, in his Response, argues that Defendants are not entitled to summary judgment because "there are genuine issues of material fact in

-4-

dispute." Plaintiff's Response, p. 1. Upon review of the record the Court finds there are no issues of material fact and, as more fully set forth below, concurs that Defendants are entitled to summary judgment as a matter of law.

## I. Summary Judgment Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of material fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. Further, "allegations

in affidavits must be based on personal knowledge, and not be based, even in part, "upon information and belief."' Pitman v. Tucker, 213 F.3d 867, 870 (11th Cir. 2008)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).  Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial."  Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.  Beard, 548 at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th

-6-

Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment."  Scott v. Harris ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007).  In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

## II.  Factual Narrative

Plaintiff, Freddie L. Colquitt ("Plaintiff" or "Colquitt"), while a pretrial detainee confined in the Lee County Jail, initiated this action by filing a *pro se* civil rights complaint form (Doc. #1, "Complaint") on August 26, 2005.  Subsequent to filing this action, Plaintiff was transferred to the custody of the Secretary of the Florida Department of Corrections.  The Complaint alleges a First Amendment violation for retaliation, an equal protection violation, a substantive due process violation, and a procedural due process violation, stemming from a July 23, 2005 incident in which Plaintiff was subjected to disciplinary action. See generally Complaint.  Defendants deny that they violated any of

-7-

Plaintiff's constitutional rights. <u>See generally</u> Defendants' Motion. Defendants maintain that Plaintiff was issued a disciplinary infraction because he failed to respond when contacted by a correctional officer, which then required officers to stop what they were doing to check on Plaintiff and threatened the security of the institution. <u>Id.</u>

According to the Complaint, on June 30, 2005, Defendant Anderson conducted a search of Plaintiff's cell and "seized three (3) ink pens and left two (2) empty ink pens." Complaint at 3.[3] Plaintiff "sought administrative redress via [the] emergency grievance process" against Defendant Anderson regarding the June 30th ink pen incident. <u>Id.</u> On July 5, 2005, Defendant Captain Brock advised Plaintiff that his grievance concerning the ink pens had been forwarded to Captain Ellegood. <u>Id.</u>

On July 23, 2005, after Plaintiff returned to his cell from showering and using the telephone, Defendant Anderson "came over the PA System desiring to talk with [Plaintiff]; at which time the [Plaintiff] was making his Islamic Prayer, and did not desire to talk with Officer Anderson." <u>Id.</u> at 4. Approximately 15 minutes later, Defendant Anderson came to Plaintiff's cell and inquired why Plaintiff was "ignoring him?" <u>Id.</u> at 5. Plaintiff responded that he "was praying and did not desire to talk with [Anderson]." <u>Id.</u>

---

[3]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

A couple of hours later, Plaintiff was issued a disciplinary infraction, which charged him with "conduct which interferes with the security and orderly running of the institution."   Id. Plaintiff claims that the "disciplinary infraction" was a "reprisal tactic" for Plaintiff filing a grievance against Defendant Anderson in connection with the June 30th ink pen incident.   Id.   In support, Plaintiff argues that Defendants Anderson and DaRoss "knew" or "should have known" that Plaintiff was in his cell. Plaintiff suggests that Defendants Anderson and DaRoss "crafted a designful tactic" by claiming that they had to leave their position to check on Plaintiff's well-being after he failed to respond when called by Defendant Anderson to "justify" Anderson's retaliation. Id. at 7.

On July 28, 2005, a hearing before the disciplinary board was held, at which time Plaintiff was found guilty "based on lack of supportive evidence . . . lack of witness statements and the supporting statements of Officer Anderson and [Sergeant] DaRoss." Id.   Defendants Minichini, Sosa and Hernandez were members of the disciplinary board.   Id.   Sergeant Rodgers approved the disciplinary board's findings.   Id. at 9.   Plaintiff appealed the disciplinary board's findings challenging 1) whether Officer Anderson had to leave his post to check on Plaintiff's "well-being" as alleged by Anderson since Anderson was mandated to visually check on all inmates every thirty minutes; and 2) that the disciplinary hearing was partially conducted over the jail intercom

-9-

system instead of in the presence of Plaintiff.  Id. at 15-18.

After further investigation, Plaintiff's appeal was denied by

Defendants Captain Scott Brock and major Michael Waite.  Id. at 9.

In conclusion, Plaintiff contends that the Defendant Anderson

retaliated against Plaintiff by issuing Plaintiff a disciplinary

infraction without cause; Defendant DaRoss approved of the

retaliation by preparing an affidavit in support of the

disciplinary infraction; Defendants Minichinni, Sosa and Hernandez

approved of the retaliation by finding Plaintiff guilty of the

disciplinary infraction; Defendant Rodgers approved of the

retaliation by approving the disciplinary infraction; and,

Defendants Brock and Waite approved of the retaliation by denying

Plaintiff's appeal.  Id. at 7-10.  Further, Plaintiff states that

the retaliation "amounted to an atypical and significant hardship

on the Petitioner in relation to ordinary incidents of prison

life." Id. at 11.  Plaintiff states that the relief he seeks "is

to be determined." Id. at 10.

Based upon the record, the material undisputed facts pertinent

to this matter can be summarized as follows.[4]  On July 23, 2005,

Plaintiff was housed in the Lee County Jail at the Core building in

---

[4]Plaintiff submits eight of his own affidavits.  See Pl. Exhs.
N-U.  These affidavits contain self serving statements, argument on
the evidence, legal conclusions, and conclusory allegations.
Consistent with the rule of law, the Court will consider only the
admissible portions of the affidavit and disregard the inadmissible
portions. See Lee v. Nat'l Life Assur. Co. of Canada, 632 F.2d 524,
529 (5th Cir. 1980).

C Pod, cell C-8, building North 1.  Defs. Exh.  2, ¶9.  The cell is located on the second floor of the pod.  Id.  Plaintiff was the sole occupant of the cell.  Defs. Exh.  1, ¶12.  Defendant Anderson was working in C Pod on July 23, 2005.  Defs. Exh. 2, ¶3.  At sometime during the morning hours,[5] Plaintiff was removed from his cell for thirty minutes to shower and use the telephone.  Defs. Exh. 2, ¶5.  After the expiration of the thirty minutes, Plaintiff was returned back to his cell.  Defendant Anderson, who was working at the officer's station was performing a visual check of the inmates in C Pod, which is required by jail policy to take place every thirty minutes.  Defs. Exh. 2, ¶4.  Defendant Anderson did not see Plaintiff return to his cell and could not visually see into Plaintiff's cell from his position at the station.  Id., ¶10.  The location of the officers station does not afford a view inside the interior of Plaintiff's cell, unless the inmate is standing by the cell door.  Defs. Exh.  1(q); Defs. Exh.  2, ¶10; Defs. Exh. 6, ¶6.  Defendant Anderson contacted Plaintiff over the intercom system in his cell, but Plaintiff did not respond when called.  Defs. Exh. 2, ¶11; Defs. Exh. 6, ¶5.  Defendant Anderson then called Plaintiff over the intercom system in the day room and still

_____

[5]Defendants states that Plaintiff was removed at approximately 8:37 a.m., Defs. Exh.  2, ¶5, and Plaintiff avers that he was removed earlier since the telephone log reflects a phone call he claims to have made at 8:33 a.m. Pl. Exh. N, ¶4. The Court finds the exact time that Plaintiff was removed or returned to his cell is not a material fact for purposes of ruling on the instant Motion.

received no response.  Defs. Exh. 2, ¶12.  Defendant Anderson made several additional attempts to call Plaintiff over the intercom system in both his cell and in the day room, but did not receive any response from Plaintiff.  Id., ¶13.  Consequently, Defendant Anderson and Defendant DaRoss left their stations to make a visual inspection of Plaintiff's cell.  Defs. Exh. 2, ¶14; Defs. Exh. 6, ¶¶7-8.[6] Defendant Anderson found Plaintiff sitting in his cell. Defs. Exh. 2, ¶15.  When asked why he did not respond to Defendant Anderson, Plaintiff commented that the officers had ignored him earlier so he was ignoring them.  Id., ¶16; Defs. Exh. 6, ¶10. Plaintiff acknowledges in his Complaint that he heard Anderson calling him but that "he did not desire to talk with officer Anderson."  Complaint at 4, ¶8.

As a result of the incident, Defendant Anderson issued Plaintiff a disciplinary infraction for a violation of Rule #8 of the Inmate Rules and Regulations Handbook- Conduct Which Interferes With the Security and Orderly Running of the Institution.  Defs. Exh. 2, ¶18.  Violation of Rule #8 "is considered a major offense, punishable by 1-30 days of disciplinary confinement and loss of all

---

[6]Plaintiff states that only Defendant Anderson came to check on Plaintiff in his cell. Complaint at 5, ¶10; Pl. Exh. O, ¶12. Defendant DaRoss in his Affidavit states that he "followed fifteen feet behind Deputy Anderson . . . [and] . . .was halfway up the stairs" when Anderson confirmed that Plaintiff was in his cell and he heard Plaintiff admit that he was ignoring Anderson. Defs. Exh. 6, ¶¶8-10.  The Court does not find these statements in dispute  as it is reasonable to assume that Plaintiff may not have been able to see DaRoss from Plaintiff's position in his cell on his bunk.

privileges." Id. at ¶19.  Plaintiff was advised of the charges and was permitted to offer evidence at the disciplinary hearing held on July 28, 2005.  Defs. Exh.  5, ¶5.  The disciplinary committee was comprised of Defendants Hernandez, Sosa and Minichini. Defs. Exhs. 5, 7, 8.  Officer Anderson and Sergeant DaRoss provided sworn affidavits to the disciplinary committee indicating that Plaintiff "failed to respond" when called.  Id.  Plaintiff "did not deny that he failed to respond." Id.  Rather, Plaintiff stated to the committee "that he did not have to answer an officer unless he was ordered to do so." Id.  Based upon the evidence submitted, the Committee members found Plaintiff guilty of the charge.  Id. The Committee recommended 30 days disciplinary confinement as well as loss of privileges including recreation, canteen, visitation and newspaper access.  Id.  Plaintiff was advised of the findings orally at the conclusion of the hearing.  Id.  The disciplinary recommendations were consistent with the recommendations set forth in Lee County Jail's Policy and Procedures. Defs. Exhs.  7, p.  3-4.  At the time of the hearing, none of the Committee members were aware that Plaintiff had filed a June 30th grievance against Defendant Anderson regarding the ink pen incident. Defs. Exhs.  5, 7, 8.  Defendant Rodgers, after reviewing the Defendants Anderson and DaRoss' affidavits and Plaintiff's statement to the Committee, "concurred with the Committee's recommendations and entered a final disposition on August 1, 2005 approving the Committee's recommendations of 30 days of disciplinary confinement, loss of all

gain time, and privileges including recreation, canteen, visitation and newspapers." Defs. Exh. 4, ¶5.

Plaintiff appealed the Committee's recommendations on July 28, 2008, before Defendant Rodgers entered a final disposition of the Committee's findings. Id. at ¶6. In his appeal, Plaintiff contended that 1) the disciplinary hearing was not conducted pursuant to "proper procedures" because only part of the hearing was completed in Plaintiff's presence; and, 2) the disciplinary infraction was unfounded because there was no policy requiring an inmate to "answer any questions posed by an officer over the electronic audio panel." Defs. Exh. 1(k). On August 2, 2005, Plaintiff filed an addendum to his appeal in which Plaintiff also claimed that the reasons behind the disciplinary infraction were disingenuous since Defendant Anderson knew or should have known that Plaintiff was in his cell, and was required to make a visual checks of the inmates every thirty minutes. Id., (l). On August 2, 2008, Officer Minichini attested to the fact that the disciplinary hearing "was conducted in front of Colquitt's cell in his presence." Id., (m). Defendants Brock and Waite, after reviewing all the evidence, denied Plaintiff's appeal. Id., (n); Defs. Exh. 3, ¶¶4-6.

## IV.  Applicable Law

### Retaliation and Conspiracy

Recently, the Eleventh Circuit reaffirmed that "First Amendment rights to free speech and to petition the government for

a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." <u>Douglas v. Yates</u> ___ F.3d ___, 2008 WL 2875804 *4 (July 28, 2008)(quoting <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1112 (11th Cir. 2006)).  To establish a retaliation claim, the inmate must demonstrate that "first, his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, there is a causal connection between the retaliatory actions and the adverse affect on speech." <u>Id.</u> (citing <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005)).  Thus, an essential element of a First Amendment retaliation claim is the existence of a retaliatory motive.  <u>See</u> <u>Gattis v. Brice</u>, 136 F.3d 724, 726 (11th Cir. 1998) ("To succeed in a section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision.").  <u>See also</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1240 (11th Cir. 2003).  A plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive.  <u>Crawford -El v. Britton</u>, 523 U.S. 574, 600 (1998) (citations omitted). In essence, a plaintiff must be able show that a defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.  <u>Smith v. Mosley</u>, 532 F.3d 1270, 1278 (11th Cir. 2008).

Courts are not to infer causation or construe legal conclusions as facts. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242 (11th Cir. 2005). Further, courts should give deference to prison officials when evaluating whether there was a legitimate penological reasons for conduct alleged to be retaliatory. Sandin v. Conner, 515 U.S. 472, (1995).

Assuming arguendo that Plaintiff fulfilled the first and second elements to establish a retaliation claim, the Court finds no reasonable jury would find that the facts support a retaliatory motive on behalf of any of the Defendants. Here, Defendant Anderson was not aware that Plaintiff had previously filed a grievance against him concerning the July 30th ink pen incident. Def. Ex. 2, ¶20.[7] Even if Defendant Anderson was aware of the grievance, the Court finds that no reasonable jail official would seek to retaliate over a single grievance, especially concerning the subject matter raised by Plaintiff - - the taking of ink pens. Grievances by inmates are part of the correctional system, and jail officials are accustomed with dealing with them on a daily basis. In fact, Plaintiff states that Defendant Anderson advised him that he could file a grievance if he objected to Anderson taking his pens. The Court does not find that Defendant Anderson was

_____

[7]Plaintiff's conclusory statement that Defendant Anderson was aware that Plaintiff had filed a grievance concerning the ink pen incident is not based on personal knowledge. Pl. Exh. N, ¶13. Further, Plaintiff provides no factual support for this assumption.

"subjectively motivated to discipline" Plaintiff because he filed
a grievance against him.  See Smith v. Mosley, 532 F.3d 1278.
Rather, the Court finds that Defendant Anderson would have
disciplined Plaintiff "even in the absence of protected conduct."
See Id.  In particular, Plaintiff heard Defendant Anderson calling
him but choose to ignore Defendant Anderson, without good cause.
Plaintiff's obstinate behavior required Defendants Anderson and
DaRoss to leave their respective stations to check on Plaintiff.
Clearly, Plaintiff's conduct under these circumstances could
reasonably threaten the security of the institution.  Thus, the
Court finds Plaintiff has failed to carry his burden of proof
regarding the third element, causation, required by Bennett, and
will grant summary judgment to Defendants on Plaintiff's
retaliation claim.

     To prove a conspiracy under 42 U.S.C. § 1983, "a plaintiff
must show an underlying actual denial of his constitutional rights"
and "prove that the defendants reached an understanding to deny the
plaintiff's rights."  Hadley v. Gutierrez, 526 F.3d 1324, 1332
(11th Cir. 2008)(citations omitted).  Here, because the finds no
evidence to support Plaintiff's claim that Defendant Anderson
retaliated against him, the Court need not determine whether the
Defendants "reached an understanding" in denying Plaintiff his
rights.

     Even if the Court found Anderson did retaliate in issuing
Plaintiff the disciplinary infraction, the Court finds no direct or

circumstantial evidence to support a finding that there was an agreement between Defendant Anderson and any of the other Defendants to cover up the alleged retaliation.  In fact, when offered an opportunity to present his side to the disciplinary committee, Plaintiff did not challenge Defendant Anderson's action as retaliatory.  Instead, Plaintiff claimed "he did not have to answer to an officer unless he was ordered to do so!"  Defs. Exh. 1(I).  Alternatively, Plaintiff proposes technical arguments as to why he should not be disciplined for not responding to Anderson: 1) because Defendant Anderson was required to make a visual inspection of the inmate every thirty minutes, and thus was performing his normal duties by checking on Plaintiff; or 2) because Defendant Anderson should have known that Plaintiff was in his cell due to the log entries.  Defs. Exh. 1(l).  Thus, the Court finds no evidence to support Plaintiff's claim that Defendants conspired to deprive Plaintiff of any constitutional right.  Consequently, the Court will grant Defendants summary judgment on this claim.

        <u>Equal Protection Claim</u>

        In order to plead an equal protection claim, a plaintiff must allege: (1) that he has been treated differently than "similarly situated" inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right.  <u>Sweet v. Secretary Dept. of Corrections</u>, 467 F.3d 1311, 1319 (11th Cir. 2006), <u>cert. denied</u> __ U.S. __ (2007); <u>Jones v. Ray</u>, 279 F.3d 944, 946-947 (11th

Cir. 2001). Conclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient. <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1367-68 (11th Cir. 1998). The Complaint is completely devoid of any allegations that any other inmate who failed to respond to an officer when summoned was treated any differently than Plaintiff. Consequently, the Court finds that Plaintiff has failed to allege, yet alone demonstrate, an Equal Protection claim. Consequently, the Court will grant Defendants summary judgment on Plaintiff's equal protection claim.

<u>Substantive Due Process</u>

It is not entirely clear on what basis Plaintiff claims Defendants violated his substantive due process rights. Substantive due process protects an individual's "fundamental" rights, "rights that are implicit in the concept of ordered liberty." <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994)(internal quotations and citations omitted). Substantive rights that are created by state law are not subject to due process protection, because substantive due process rights are created only by the United States Constitution. <u>Id.</u> Thus, even if the Defendants violated a Lee County Jail regulation, such a violation does not create a substantive due process right or a liberty interest enforceable in a § 1983 action. <u>Sandin v. Conner</u>, 515 U.S. at 472. <u>See</u> <u>also</u> <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every

wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."); <u>Lovins v. Lee</u>, 53 F.3d 1208, 1211 (11th Cir. 1995)(citing <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115 (1992)).

Further a pretrial detainee may be subject to "permissible regulation." <u>U.S. v. Salerno</u>, 481 U.S. 739, 747 (1987). "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." <u>Bell v. Wolfish</u>, 441 U.S. 520, 561 (1979). Disciplinary board members, Defendants Minichini, Sosa and Hernandez, recommended sanctions that were the jail's recommended sanctions for a violation of a "major" offense. <u>See</u> Defs. Exh. 1(b). Defendants Rodgers, Brock and Waite approved the recommended sanctions. Plaintiff presents no evidence that the recommended and approved disciplinary sanctions amounted to an atypical and significant hardship on Plaintiff in relation to ordinary incidents of prison life. <u>See</u> <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11th Cir. 1998)(finding that two month placement in disciplinary confinement did not constitute deprivation of inmate's protected liberty interests as defined by <u>Sandin v. Conner</u>, 515 U.S. 472, 475 (1980)). Consequently, the Court will grant Defendants summary judgment on Plaintiff's substantive due process claim.

<u>Procedural Due Process</u>

There are three procedural requirements for a disciplinary hearing: 1) advance written notice; 2) a written statement of the

reasons for the disciplinary action; and 3) the opportunity to call witnesses and present evidence.  Wolff v. McDonnell 418 U.S. 539, 556, 563-66 (1974); Young v. Jones, 37 F.3d 1457, 1459-60 (11th Cir. 1994). The record irrefutably demonstrates that Plaintiff was afforded procedural due process during the disciplinary proceedings.  Plaintiff was advised of the disciplinary infraction the same day.  See Defs. Exh.1(d).  An investigation of the incident was undertaken by another officer and reviewed by a supervisor.  Id.  Five days after the incident, a disciplinary hearing was held and none of the members of the disciplinary committee were witnesses to or involved in the incident.  Id. Plaintiff was present and permitted to offer evidence or testimony on his behalf.  Id.  The Committee's recommendations and findings were presented to Plaintiff and forwarded to the watch commander for review.  Defs. Exhs. 5, ¶6; Defs. Exh. 6, ¶6, Defs. Exh. 7, ¶6.  The watch commander reviewed Plaintiff appeal of the Committee's recommendations and findings, and after reviewing the evidence approved the Committee's recommendations.  Defs. Exh. 5, ¶5. Plaintiff's allegations regarding the propriety of the disciplinary hearing were investigated and deemed unfounded.  Defs. Id. at ¶7. Plaintiff's appeal was ultimately denied. Defs. Exh. 1, ¶4; Defs. Exh. 3, ¶5.  The Court finds Plaintiff has failed to demonstrate that he did not receive a fair hearing in connection with the disciplinary infraction in violation of his procedural due process

rights, and will grant Defendants' summary judgment on Plaintiff's procedural due process claim.

Any other claims  not addressed herein are deemed to be without merit.[8]  Based upon the foregoing the Court finds that Defendants' Motion for Summary Judgment is due to be granted.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  Defendants' Motion for Summary Judgment (Doc. #58) is **GRANTED**.

2.  The **Clerk of Court** shall enter judgment, terminate any pending motions, and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __2nd__ day of September, 2008.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

---

[8]Defendants also assert they are entitled to qualified immunity and argue that requiring Plaintiff to respond when called did not violate Plaintiff's First Amendment right of free exercise. Defendants' Motion, p. 7-11.  Under any possible interpretation of Plaintiff's Complaint, however lenient, the Court does not find Plaintiff articulated a First Amendment free exercise claim. Further, because the Court finds that Defendants conduct did not violate Plaintiff's constitutional rights, it need not determine whether Defendants are entitled to qualified immunity.  Cottone v. Jenner, 326 F.3d 1352, 1358-59 (11th Cir. 2003).